IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MALINDA CHAPMAN GAINEY, | ) | Civil Action No.: 4:02-0208-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| TALLEY METALS, A CARPENTRY | ) | |
| COMPANY AND REDDING, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MALINDA CHAPMAN GAINEY, | ) | Civil Action No.: 4:02-3355-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| TALLEY METALS TECHNOLOGY, INC., | ) | |
| TALLEY METALS INDUSTRY, INC., | ) | |
| CARPENTER TECHNOLOGY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this matter, the plaintiff, Malinda Chapman Gainey ("Gainey"), originally filed a complaint (02-0208) in the Chesterfield County Court of Common Pleas on December 21, 2001, alleging causes of action for malicious prosecution[1], failure to pay overtime under the Fair Labor Standards Act, wrongful retention of wages in violation of South Carolina Code Ann. § 41-10-80. Defendant timely removed the action to this court on January 22, 2002. On October 8, 2002, the plaintiff filed a second complaint in which she alleges several causes of action under Title VII of the Civil Rights Act of

---

[1] The court dismissed the malicious prosecution claim on April 18, 2003.

1

1964, 42 U.S.C. § 2000e, et seq.. The court consolidated the two (2) cases on April 10, 2003. On May 12, 2003, the defendants filed a motion for summary judgement which was subsequently withdrawn and incorporated into a motion filed on April 14, 2004.

Pursuant to the provisions of Title 28, U.S.C. § 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. This matter is now before the undersigned for review of the Report and Recommendation ("Report"), which was filed by United States Magistrate Judge Thomas E. Rogers, III, on January 7, 2005. In his Report, Magistrate Judge Rogers carefully considers the issues and recommends that the defendants' motion for summary judgment regarding the plaintiff's claim under Title VII for disparate treatment for terminating her employment be granted and denied in all other respects. Defendants filed objections to the Report on January 24, 2005. Plaintiff filed a response to the defendants' objections on February 7, 2005.

In conducting this review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

**Facts**

The Court agrees with the factual and procedural background as set forth by the Magistrate Judge in his Report and Recommendation. The Court therefore adopts the Magistrate Judge's version of the facts in this case.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the Court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

3

**Discussion**

As stated above, the defendants filed specific objections to the Report on January 24, 2005, alleging that the Magistrate Judge erroneously disregarded legal standards. The court will address the objections as follows:

**1) Employer-Employee Relationship**

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees. 42 U.S.C. § 2000e, et seq. An employer is defined as a "person engaged in an industry affecting commerce . . . who has fifteen or more employees" during a specified period of time. 42 U.S.C. 2000e(b). The defendants do not dispute that Talley qualifies as an employer under this definition. The Act defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). In the objections to the Report, the defendants object to the Magistrate Judge's conclusion that an employer-employee relationship existed between the plaintiff and defendants and, therefore, concluding that the defendants motion for summary judgment based on a lack of subject matter jurisdiction be dismissed.

The defendants argue that the Magistrate Judge overlooked several critical factors that confirm Defendants did not control the manner and means of the plaintiff's performance so as to create an employer-employee relationship. The Defendants point to the Fourth Circuit's holding in Farlow v. Wachovia Bank of North Carolina, N.A., 259 F.3d 309, 313 (4th Cir. 2001), *quoting* Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752 (1989), where the Court stated that relevant factors to consider in determining whether a person is an employee include:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business

of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

First, it is important to note that the Farlow Court stated that "in determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished." Id. The Court then went on to state that the elements listed above were "other factors relevant to this inquiry . . . ." Accordingly, the court finds that in this case, the Magistrate Judge was correct in his analysis to conclude that in the light most favorable to the plaintiff, the defendants had the right to assign work, the right to control the means and manner of work performance, the right to establish the time schedule of work, and the right to fire and hire. In the light most favorable to the plaintiff, the defendants had the right to control the plaintiff, and such control is the most important factor for purposes of Title VII.

The defendants state that the Farlow Court held that the financial factors, including the tax treatment of the worker, employee benefits, and how the worker was paid are the *more* significant factors. However, the Fourth Circuit only stated that the financial factors were *significant* in determining a worker's status. As mentioned above, the degree of control remains the key inquiry. In light of the control the defendants exerted over the plaintiff's conditions of employment, the factors other than control are of marginal importance. See Williams v. Grimes Aerospace Company, 988 F. Supp. 925 (D.S.C. 1997). Therefore, the court finds that Magistrate Judge was correct to conclude that an employment relationship existed between the plaintiff and defendants. Accordingly, the defendants' specific objections regarding this point are hereby overruled.

**2) Plaintiff's Hostile Work Environment Claim**

To establish a hostile work environment claim, the plaintiff must show: (1) the conduct was

5

unwelcome; (2) it was based on the plaintiff's gender; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and, (4) it was imputable on some factual basis to employer. Spicer v. Virginia, 66 F.3d 705, 710 (4th Cir. 1995) (en banc).

The defendants' first objection is that the Magistrate Judge erroneously determined that the plaintiff had established the first three prongs for hostile work environment claim. In doing so, the defendant argues that the Magistrate Judge misapprehended the plaintiff's burden on summary judgment. The defendants cite to the case of Settle v. Baltimore County, 34 F.Supp. 2d 969 (D. Md. 1999), where the Court held:

> avoidance of summary judgment and employment discrimination cases . . . is not remotely a function of the number of incidents alleged by a plaintiff as constituting evidence of unlawful discrimination. In particular, a prima facia case of discrimination or retaliation is not established by counting allegations, especially where the principle support for those allegations consists primarily, if not solely of prior statements of the alleged victim.

However, the court finds that the Magistrate Judge did not just count the number of incidents in determining the issue of summary judgment with regards to the hostile work environment claim. Therefore, the defendants' objection in this regard is hereby overruled.

### A. Severe or Pervasive

As the Magistrate Judge stated in his Report, to qualify as a severe and pervasive for purposes of Title VII, the harassment must be objectively and subjectively severe or pervasive as to alter the conditions of the plaintiff's employment and render the workplace abusive. Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998); Hartsell v. Duplex Products, 123 F.3rd 766, 773 (4th Cir. 1997). The Fourth Circuit has utilized a four factor approach to evaluate the totality of the circumstances in determining whether conduct is severe or pervasive: (1) the frequency of the discriminatory conduct;

6

(2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and, (4) whether the conduct unreasonably interfered with the plaintiff's work performance. Connor v. Schrader Bridgeport Int'l, Inc., 27 F.3d 179, 193 (4th Cir. 2000).

The defendants argue that contrary to the Magistrate Judge's Report, the plaintiff has failed to establish that the alleged harassment was sufficiently severe or pervasive so as to alter the terms or conditions of plaintiff's employment and create a hostile working environment. In support of this argument, the defendants cite the United States Supreme Court's holding in Oncale v. Sundouner Offshore Services, Inc., 523 U.S. 75, 81 (1998), where the Court stated, "we have always regarded that requirement (severe or pervasive) as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the work place – such as male-on-male horseplay or intersexual flirtation – for discriminatory conditions of employment. The defendants also cite the United States Supreme Court finding in Clark County Sch. Dist v. Breeden, 532 U.S. 268 (2001), where the Court stated that "a recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (internal citations omitted). Considering such, the defendants argue that the plaintiff's allegations of harassment, including the handful of alleged statements, that plaintiff did not belong at Talley, Mr. Addison's alleged lewd gesture on a piece of steel, and purported physical altercation, were not subjectively or objectively offensive so as to support the plaintiff's claims.

The court finds that the defendants' arguments on this point are without merit. Viewing the evidence in the light most favorable to the plaintiff, as the court is charged with doing in a motion for summary judgment, the plaintiff experienced more than simple teasing, offhand comments, insults, slurs, vulgarities, and propositions. As the Magistrate Judge stated in his Report, during the six week period in which the plaintiff worked at the Talley Metals plant, according to her testimony on several

7

occasions she allegedly was subjected to comments that she should not be there because of her gender, on several occasions her trainer/co-employee made lewd gestures by "humping the iron" while standing only a few inches behind her, she was struck by Mr. Addison who also refused to train her as he was supposed to do and did this based upon her gender. The alleged conduct culminated in the alleged physical conduct which caused the plaintiff to become emotionally upset and leave her employment. As the Magistrate Judge stated, the defendants' evidence in this regard is in stark contrast to the version of the events presented by the plaintiff, however, material issues of fact exist regarding the severe or pervasive nature of the alleged conduct. Therefore, this court finds that the Magistrate Judge was correct to conclude that the plaintiff has established for purposes of summary judgment that the first three prongs of the *prima facie* case involve issues of fact. Accordingly, the defendants' objections on this point are hereby overruled.

### B. Hostile Work Environment Imputed to the Employer

The last prong the plaintiff must establish in order to bring a hostile work environment claim is the hostile work environment must be proved to be imputed to the employer. If the offending party is the plaintiff's supervisor, the employer will be strictly liable where the harassment culminated in a tangible employment action. Faragher, 524 U.S. at 807. However, if the offending supervisor did not commit a tangible employment action, the employer can avoid liability if it can show (1) that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that the employer provided. Id.

The defendants argue that they are entitled to raise the Faragher defense and that the Magistrate Judge incorrectly determined that Talley failed to exercise reasonable care to prevent and promptly correct the alleged harassing behavior. In support of this argument, the defendants state that

8

both it and Olsten Staffing maintained employee handbooks that contain policies prohibiting sexual harassment, and that such handbooks were distributed to the employees at the time of hire. The defendants point to the Fourth Circuit's decision in Lissau v. Southern Food Svc., Inc., 159 F.3d 177, 182 (4th Cir.1998), where the Court held that the law is clear that the distribution of an anti-harassment policy provides "compelling proof" that a company exercised reasonable care in preventing and promptly correcting sexual harassment. "The only way to rebut this proof is to show that the employer adopted or administered an anti-harassment policy in bad faith, or that the policy was otherwise defective or dysfunctional." Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999). The defendants argue that the plaintiff failed to present any evidence that either Olsten's or Talley's harassment policy was adopted in bad faith, and further failed to offer any evidence that the policies were defective or dysfunctional. The defendants state that they have offered undisputed evidence to show that once it became aware of the plaintiff's alleged concerns, it promptly investigated the plaintiff's concerns, interviewed witnesses and notified the plaintiff of its findings. Thus, the defendants argue that the Magistrate Judge's conclusion that Talley failed to prevent and promptly correct the alleged harassment, is simply not supported by the evidence in the record.

     The court finds the defendants' arguments are without merit. As the Magistrate Judge stated in his Report, the plaintiff's testimony indicates that on several occasions, her supervisors were told of or witnessed Mr. Addison's behavior, as well as the behavior of others. In the light most favorable to the plaintiff, prior to August 25, 2001, the most the supervisors did was to tell the plaintiff not to pay any attention to this inappropriate conduct and lightly council the offending parties. Contrary to the defendants' assertion that the record is undisputed, the plaintiff's allegations reveal that the defendants have failed to show that it took reasonable, prompt, corrective action relating to conduct allegedly occurring prior to August 25, 2001, and/or prior to when the plaintiff was no longer working

at Talley Metals. For the above reasons, the court overrules the defendants' objection as to this point and finds that the Magistrate Judge was correct to conclude that there are genuine issues of material fact as to whether the plaintiff can prove that the hostile work environment is imputed to the employer.

**3)  Plaintiff's Retaliation Claim**

The court notes that most of the arguments that the defendants make in the objections to the Magistrate Judge's Report were not before the Magistrate Judge as they were not presented under the retaliation claim section in the defendants' memorandum supporting the motion for summary judgment. It is inappropriate for the defendants to raise new arguments in the objections to the Magistrate Judge's Report, however, the court will consider and address the additional arguments.

42 U.S.C. § 2000e-3(a) provides, in relevant part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter.

Claims fall either under the opposition clause or the participation clause of the statute. Both parties agree that the plaintiff's claim falls within the opposition clause.

**A.  Prima Facie Case**

In order for the plaintiff to state a *prima facie* case for retaliation under the opposition clause, she must show: (1) she engaged in a protected activity, (2) the defendant took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. Matvia v. Bald Head Island Management, Inc., 259 F.3d 261, 271 (4th Cir. 2001); Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985).

**i. Protected Activity**

To establish "protected activity," the plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir. 1990); see also Ross, 759 F.2d 355 n. 1 (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of discrimination was in fact meritorious in order to prevail). "The inquiry is therefore (1) whether [plaintiff] 'subjectively (that is, in good faith) believed' that the district had engaged in a [illegal practice], and (2) whether this belief 'was objectively reasonable in light of the facts,' a standard which we refer to as one of 'reasonable belief.'" Peters v. Jenney, 327 F.3d 307 (4th Cir. 2003) (citing Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002).

The defendants argue in the objections to the Magistrate Judge's Report that pursuant to the plaintiff's own representation, her only "reporting activity" (i.e., filing her charge of discrimination) occurred after her assignment at Talley ended. The defendants argue that since the alleged adverse action in this matter proceeded the plaintiff's alleged "protected activity," logic dictates that the plaintiff's claim of retaliation fails as a matter of law.

However, the court finds that the plaintiff is not alleging that her protected activity is filing her charge of discrimination with the appropriate agency. The plaintiff claims she participated in a protected activity when she reported to her supervisors that Mr. Addison and other men were telling her that she should not be working. Plaintiff states that she also opposed Mr. Addison's sexual posturing by telling him to stop. Finally, on the day that Mr. Addison allegedly hit Ms. Gainey, the plaintiff states that she spoke to Gattison and Perry before going back to her work station. The plaintiff states that she told them that she did not want to have to continue to put up with the men telling her that she should not be working there because of her sex, and refusing to work with her.

The plaintiff states that after she returned to work another man did exactly the thing that she had complained of, refused to work with her and made a scene about it. The plaintiff states that she then took a break, walked into the courtyard and started to cry. The plaintiff states that she told Gattison that she could not work under those conditions, as she was unable to do her job, if the other workers would not respond.

Therefore, the protected activity which the plaintiff alleges is not reporting discrimination to an agency as the defendants state in the objections to the Magistrate Judge's Report, but reporting to her supervisors that she was being subjected to harassing behavior.

As the Magistrate Judge stated in his Report, it is not necessary that the plaintiff show a meritorious Title VII claim, however, she must at least show a reasonable belief that the employment practice did violate Title VII. This court finds that the Magistrate Judge was correct to conclude that in the light most favorable to the plaintiff, she clearly engaged in protected activity when she complained to her supervisors on several different occasions.

### ii. Adverse Employment Action

Conduct short of "ultimate employment decisions – to hire, discharge, refuse to promote, etc. – can constitute an adverse employment action under Title VII." Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001). The court agrees with the Magistrate Judge's finding that there is no dispute that sending plaintiff home and terminating her employment assignment constitutes adverse action. Likewise, the defendants made no objection to such finding in their objections to the Report.

### iii. Causal Connection

The third element that the plaintiff must prove to state a *prima facie* case for retaliation is that there was a causal connection between the protected activity and the adverse action. The Fourth Circuit Court stated in Tinsley v. First Union National Bank, 155 F.3d 435, 443 (4th Cir. 1998), that

"normally, very little evidence of a causal connection is required to establish a *prima facie* case." Contrary to the defendants' argument, most often plaintiffs can establish a causal connection through indirect evidence, such as temporal proximity between the protected activity and the adverse employment action. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998), ("[t]his court has held that evidence that the alleged adverse action occurred *shortly* after the employer became aware of the protected activity is sufficient to 'satisf[y] the less onerous burden of making a *prima facie* case of causa[tion].' " (citing to Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).

In this case, the adverse employment action, suspending the plaintiff without pay, and then terminating her occurred within, the former within minutes or hours of the plaintiff's opposition activity, and the latter within three (3) days of the opposition activity. Therefore, the court finds that there is temporal proximity between the protected activity and the adverse employment action.

In order to show a causal connection, the plaintiff must also show that the employer knew that the plaintiff engaged in the protected activity prior to taking the adverse employment action. As the Fourth Circuit stated in Dowe, the employer's knowledge of protected activity is "absolutely necessary to establish the third element of the *prima facie* case." Id. Defendants argue that the plaintiff fails to establish the causation element because she did not discuss any of her purported complaints with the "decision maker, Kershner" (defendants' personnel manager). To support this argument, the defendants state that the Fourth Circuit held in Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998), that the plaintiff failed to establish causation when he presented no evidence that the "*decision maker*" knew of the protected activity. However, in that case the Court in fact found that the plaintiff failed to establish causation when he presented no evidence that the "*employer*" knew of the protected activity. The defendants are attempting to argue in the objections to the Magistrate

13

Judge's Report, that because the plaintiff reported the harassment to her supervisors, and not Kershner, she fails to establish causation because there is no evidence that the "employer" knew of the protected activity.

However, the plaintiff alleges that she informed her supervisors of the alleged harassment on several different occasions. This court finds that for the purpose of this summary judgment motion, the plaintiff reporting the alleged harassment to her supervisors establishes the employer's knowledge of the protected activity. See Bryant v. Aiken Regional Medical Centers, Inc., 33 F.3d 536, 543-44 (4th Cir. 2003); Tinsley, 155 F.3d at 444.

### B. Legitimate, Nondiscriminatory of Nonretaliatory Reason

Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory or nonretaliatory reason for the termination. Texas DPT. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). Although the defendants did not present a legitimate, nondiscriminatory or nonretaliatory reason for ending the plaintiff's assignment in the motion for summary judgment under their retaliatory section, the legitimate non-retaliatory reason is offered in the defendants' objections to the Magistrate Judge's Report and Recommendation. The defendants state that the plaintiff's work assignment ended because she smelled of alcohol and because it believed that the plaintiff had engaged in aggressive and inappropriate behavior.

### C. Pretext

Once the defendant has met its burden of production by producing its legitimate, nondiscriminatory or non-retaliatory reason, the sole remaining issue is "discrimination *vel non*." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, (2000). In other words, the burden

14

shifts back to the plaintiff to demonstrate by a preponderance of evidence that the legitimate reason produced by the defendant, were not its true reasons, but were pretext for discrimination. Id. In this case, as mentioned above, the defendants state that the plaintiff's work assignment was terminated because she smelled of alcohol and because of her aggressive behavior. However, the plaintiff testified that she never drank before work, and that she did not smell of alcohol, and that she certainly never admitted to drinking before the job. Furthermore, the plaintiff testified that the defendants would require a breathalyzer test of workers who were suspected of alcohol use on the job. The plaintiff further states that she was never subjected to this practice, because in fact, the defendant never did suspect her of drinking. The plaintiff cites to the Fourth Circuit's holding in Fairfax Hospital v. NLRB, 14 F.3d 594 (4th Cir. 1993), where the Court held that failure to follow the usual procedures for discipline is evidence of pretext. As such, this court finds that the reasons stated above by the plaintiff could lead a jury to find that the defendants asserted reason for termination is pretextual.

For the above stated reasons, the defendants' objections to the Magistrate Judge's Report should be overruled and this court finds that the Magistrate Judge was correct to conclude that the defendants' motion for summary judgment regarding the plaintiff's retaliation claim under the opposition clause of § 2000e-3(a) should be denied.

**4) Disparate Treatment (Termination)**

As the Magistrate Judge stated in his Report, there are two methods of proving a case of intentional discrimination under Title VII: the method set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (mixed-motive) and the method established under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (pretext). In the Report, the Magistrate Judge determined that the plaintiff fails to establish a *prima facie* case under McDonnell Douglas of intentional discrimination

involving her termination. Accordingly, the Magistrate Judge recommended that summary judgment be granted as to the disparate treatment under the McDonnell Douglas framework. However, the Magistrate Judge stated in the Report that the plaintiff may also proceed under the mixed-motive method of establishing intentional discrimination. Under this method, a plaintiff must present sufficient evidence, direct or circumstantial, that, despite the existence of legitimate, nondiscriminatory reasons for the adverse employment action, an illegal factor (i.e., gender) was a motivating factor in the decision. Hill v. Lockheed Martin Logistics Mgmt. Inc., 354 F.3rd 277, 284-86 (4th Cir. 2004). The plaintiff need not show gender was the sole motivating factor but only that it was a motivating factor. Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). The gender bias must come from a relevant decision maker. Hill, 354 F.3d at 291. Also, the protected trait "must have actually played a role in the employer's decision making process and had a determinative influence on the outcome." Id. 286.

In the objections to the Magistrate Judge's Report, the defendants argue that although the Magistrate Judge correctly determined that the plaintiff failed to establish a *prima facie* case of discrimination relating to her "discharge" under the McDonnell Douglas framework, he erroneously concluded that because the defendants' version of what occurred is different than the plaintiff's version, a jury must decide the truth. The defendants argue that notwithstanding any purported "differences" between the plaintiff's and defendants' stories, the undisputed evidence establishes that Talley ended the plaintiff's assignment based on its belief that the plaintiff smelled of alcohol and that she was the aggressor in the altercation with Mr. Addison.

The defendants made essentially this same argument in their motion for summary judgment and the Magistrate Judge addressed the argument by stating that the defendants challenged the plaintiff's case on the grounds that the plaintiff relies on her own subjective beliefs and self-serving

16

statements. While this is at least in part accurate, it is not her subjective beliefs that create an issue of fact, but her version of the facts that transpired. The Magistrate Judge went further to state that the defendants' recollection and version of what occurred at various times is clearly much different from that presented by the plaintiff. This court finds that such reasoning is correct and concurs with the Magistrate Judge's Recommendation that the plaintiff may proceed under the mixed-motive method of establishing intentional discrimination. Therefore, the defendants' objections to the Magistrate's Report in this regard are overruled.

**5) FLSA**

In the objections to the Report, the defendants state that the Magistrate Judge made a correct determination as to the plaintiff's wage claims that relate to the adjustments made on the plaintiff's time cards to account for the time it took plaintiff to arrive at the workstation. However, the defendants argued that the Magistrate Judge erroneously concluded that the defendants' motion should be denied with respect to the plaintiff's claim of working extra hours at different positions because the defendants failed to contradict the plaintiff's testimony. The defendants state that the Magistrate Judge's conclusion on this point misapprehends the nature of the defendants' burden on summary judgment. The defendants cite to the Fourth Circuit's holding in <u>Dick's Sporting Goods, Inc. v. Dick's Clothing and Sporting Goods, Inc.</u>, 1999 U.S. App. LEXIS 19942 *28 (4th Cir. August 20, 1999), where the Court held that "the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the non-movant can prove his case." The defendants argue that under this standard, Talley was not required to produce evidence to contradict the plaintiff's claim that she was not paid for extra hours. The defendants argue that Talley was only required to point out the absence of evidence supporting the plaintiff's claim.

The defendants state there is absence of evidence by which the plaintiff can prove her case because she has not presented any evidence such as paycheck stubs to support her claim that she was not paid for the extra hours worked. The court finds that this argument is without merit because common sense dictates that if the plaintiff claims she has not been paid for time she allegedly worked, the paycheck stub would not be reflective of such work. Furthermore, the court finds that there is not an absence of evidence by which the plaintiff can prove her case because there is the plaintiff's testimony that she was not paid for times she allegedly worked. Therefore, the court finds that the Magistrate Judge was correct to conclude that the defendants have failed to meet the burden of showing that there is no genuine issue of material fact relating to the plaintiff's claims under the FLSA. Additionally, as the Magistrate Judge stated, the plaintiff's claim under South Carolina law for non-payment of wages is derivative of the plaintiff's FLSA claim, and summary judgment should be denied as to that claim as well. For the above stated reasons, the court overrules the defendants' objections in this regard.

## **Conclusion**

For the foregoing reasons, the court overrules all objections to the Magistrate Judge's Report and Recommendation, adopts the Report and Recommendation and incorporates it herein by reference as modified. Accordingly, the defendants' motion for summary judgment regarding the plaintiff's claims under Title VII for disparate treatment for terminating her employment (under McDonnell Douglas) is **GRANTED** and **DENIED** in all other respects.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge

Florence, South Carolina
May 6, 2005